Eliakim **SIBANDA**, Sikhatele Sibanda, Nomaqhawe Sibanda, Mthabisi Sibanda, Plaintiffs,

v.

**DISTRICT DIRECTOR U.S. I.N.S., Defendant.**

Civ. A. No. 95–K–88.

United States District Court, D. Colorado.

March 20, 1995.

of Zimbabwe. They have filed a petition for a writ of habeas corpus against the District Director, United States Immigration and Naturalization Service ("District Director"). The Sibandas concede their deportability but claim the District Director abused his discretion when he denied their request for extension of voluntary departure. For the reasons set forth below, the petition for habeas corpus is granted, the denial of voluntary departure is reversed and the District Director is ordered to grant an extension of a twelve month period of voluntary departure.

## I. *Jurisdiction.*

All causes arise under the Immigration and Nationality Act, 8 U.S.C. §§ 1101–1503 ("INA"). 8 U.S.C. § 1329. The Federal Regulations pertinently provide: "A request by an alien for extension of time within which to depart voluntarily shall be filed with the district director having jurisdiction over the alien's place of residence. Written notice of the district director's decision shall be served on the alien, and no appeal may be taken therefrom." 8 C.F.R. § 244.2. Because the Sibandas had no further avenue of direct administrative appeal, they have exhausted their administrative remedies thus triggering jurisdiction here to review the District Director's decision. *See Ajurulloski v. United States INS*, 688 F.Supp. 1272, 1276 (N.D.Ill., E.D.1988).

Further, jurisdiction to grant a writ of habeas corpus exists under 28 U.S.C. § 2241. "It is well settled that actual physical custody is no longer an absolute necessity for habeas corpus jurisdiction generally." *Ajurulloski* at 1275. Because the District Director denied the Sibandas request for an extension of voluntary departure, advising that they "will receive notice of when and where [they] are to report for deportation," A.R. at 1, there is sufficient interference with their freedom to satisfy the custody command of 28 U.S.C. § 2241(c). *See Ajurulloski*, 688 F.Supp. at 1275.

Daniel M. Kowalski, Denver, CO, for petitioners.

Mark S. Pestal, Asst. U.S. Atty., Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Petitioners are members of the Sibanda family—Eliakim (husband), Sikhatele (wife), Nomaqhawe (minor child), and Mthabisi (minor child) (collectively "Sibandas")—natives

## II. *Background.*

Eliakim Sibanda, a teacher and minister, is currently a Ph.D. candidate in history and sociology of religion, jointly sponsored by the

University of Colorado and Denver University, Iliff School of Theology. Sikhatele Sibanda, a teacher and secretary, with various diplomas and an arts degree, is currently working on another degree in computer information systems at Denver University. Mthabisi and Kukhanya (a third minor child, born in the United States), suffer from Asthma and are under the care of a physician at the National Jewish Center for Immunology and Respiratory Medicine.

Sikhatele, Nomaqhawe and Mthabisi lawfully entered the United States in 1986. Eliakim lawfully entered on a student visa in 1987 A.R. at 107–108. The family has remained in the United States since.

On March 10, 1988, Eliakim applied, pro se, to the INS in Denver for asylum. *Id.* at 100–106. The INS denied the application on October 26, 1988 and granted the Sibandas thirty days to depart voluntarily from the United States. The Sibandas did not depart and were placed in deportation upon issuance of Orders to Show Cause on March 2, 1989. *Id.* at 89–90.

On April 4, 1989, the Sibandas conceded their deportability by 77. At a May 12, 1989 hearing, the immigration judge ("IJ") denied asylum and granted the Sibandas voluntary departure until August 12, 1989, "or as may be extended by the District Director of the Immigration and Naturalization Service, under the conditions as he shall direct." *Id.* at 87–88. The IJ further ordered, if the Sibandas failed to depart as required, "the privilege of voluntary departure is withdrawn without further notice of proceedings" and they would "be deported from the United States to Zimbabwe on the charge in their Orders to Show Cause." *Id.* at 88.

The Sibandas filed a timely appeal of that decision to the Board of Immigration Appeals ("BIA"). On October 1, 1993, the BIA dismissed the appeal. *Id.* at 68–72. The BIA further ordered the Sibandas were

> permitted to depart from the United States voluntarily within thirty days from the date of the order or any extension beyond that time as may be granted by the district director; and in the event of failure so to depart, the respondents shall be deported as provided in the immigration judge's order.

*Id.* at 72.

The Sibandas timely appealed to the Tenth Circuit Court of Appeals. On September 27, 1994, the Tenth Circuit upheld the BIA's denial of asylum and request for withholding of deportation. *Id.* at 66. That court denied the Sibandas' request for reinstatement or extension of their voluntary departure date, stating "[w]e have no authority to grant such relief." *Id.* at 67 (citing *Castaneda v. INS,* 23 F.3d 1576, 1578–83 (10th Cir.1994)).[1]

On October 6, 1994, the Sibandas requested "a 6 month period of voluntary departure, and possible extensions," pending the filing of a petition for rehearing and suggestion for rehearing en banc and a motion to reopen to apply for suspension of deportation under 8 U.S.C. § 1254(e). A.R. at 55–56.[2]

On October 12, 1994, the District Director denied the request. He noted the immigration judge had granted a thirty day period of voluntary departure which the BIA had extended, the Sibandas did not depart during

---

**1.** In *Castaneda,* the Tenth Circuit held it did not have the power to bestow or reinstate a voluntary departure period. In the instant petition, the Sibandas are seeking review of an administrative denial to extend voluntary departure, rather than requesting me "to bestow such relief in the first instance." *Castaneda,* 23 F.3d at 1580. The Tenth Circuit has noted that "the district director's refusal to extend voluntary departure is reviewable in the district court pursuant to, among other provisions, the general jurisdictional grant set out in 8 U.S.C. § 1329...." *Id.* at 1579. In these proceedings, the District Director does not challenge the court's power to review his denial to extend the Sibandas' period of voluntary departure.

**2.** That section provides:

> The Attorney General may, in his discretion, permit any alien under deportation proceedings ... to depart voluntarily from the United States at his own expense in lieu of deportation if such alien shall establish to the satisfaction of the Attorney General that he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure under this subsection.

8 U.S.C. § 1254(e).

the thirty days, but before the time expired, the Sibandas filed a petition for Tenth Circuit review. That petition was denied. The Director stated that under 8 C.F.R. § 244.2, he had "the authority to extend a benefit of person(s) requesting extensions of voluntary departure when a final order of deportation or the granting of such a privilege by an immigration judge (sic.), which is not the case here." *Id.* at 53. He stated the Sibandas' proposed petition for rehearing and suggestion for rehearing *en banc* within the forty-five day limit contained in 10th Cir. R. 40.3 would again stop deportation. *Id.* The Director further asserted:

the Sibanda family will have eighteen days in which to depart the United States versus the thirty days you sought before the Tenth Circuit. I cannot consider extensions of voluntary departure when the case remains pending with the Tenth Circuit. The record will clearly demonstrate that your clients have eighteen days in which to depart or request any further extensions thereof before my office.[3]

*Id.*

The Director mentioned a member of his staff had contacted the Zimbabwe embassy and established that "medical facilities are indeed available for treatment [of the Sibanda children's acute asthma] within the country." *Id.*

On November 15, 1994, the Tenth Circuit entered the mandate relating to its September 27, 1994 Order and Judgment. *Id.* at 52. On November 16, 1994, the Sibandas filed a petition for rehearing and suggestion for rehearing *en banc*. *Id.* at 50. On November 28, 1994, the Tenth Circuit denied the petition. *Id.*

On December 21, 1994, the Sibandas again requested an extension of voluntary departure from the District Director. *Id.* at 2. The letter from the Sibandas' counsel stated: "Since the family has been here for over 7 years, we are finishing up a Motion to reopen for Suspension of Deportation, to be filed with the BIA, and an application for Stay of

Deportation, to be filed with your office, in the next few days." *Id.* Pending the adjudication of the proposed proceedings, the Sibandas requested "a nine to twelve month extension of voluntary departure."

The request was supported by forty-four pages of documentary evidence which reflected that the Sibandas would be in danger if they were deported to Zimbabwe and would have difficulty addressing their children's medical problems in Zimbabwe and that their children's education would be compromised. *Id.* at 5–49. The request noted, in light of their "lengthy stay in the U.S., the family would need considerable time to arrange for planning a new life in Zimbabwe, and transporting their household goods there, should their Suspension of Deportation efforts fail." *Id.* at 3.

On January 4, 1995, in a four paragraph letter, the District Director denied the request, stating: "I have reviewed the material you enclosed with your request and the relevant case files. I found your clients have had their cases reviewed and rejected by the IJ, the BIA and the 10th Circuit. I find nothing new in your request to merit an extension of voluntary departure." *Id.* at 1. The letter noted that no request for stay of deportation nor motion to reopen had been received. *Id.*

On January 17, 1995, the Sibandas petitioned this court to review, by way of habeas corpus, the District Director's denial of their requests for extension of voluntary departure. On January 18, 1995, this court ordered the District Director to show cause why the writ of habeas corpus should not be issued. On February 9, 1995 the District Director filed a response to the order to show cause. On February 16, 1995, the Sibandas filed a traverse.

### III. *Standard for Review.*

▮ "In reviewing the denial of discretionary relief of voluntary departure, 'we only examine whether the discretion was actually exercised and whether it was exercised in an arbitrary and capricious manner.'"

---

**3.** This calculation, though unexplained, possibly reflects that twelve days expired between the time of the BIA's order extending the thirty day period of voluntary departure and the time of filing of the appeal before the Tenth Circuit, leaving eighteen days for voluntary departure after the Tenth Circuit denied the appeal.

*Becerra–Jimenez v. INS* 829 F.2d 996, 999 (10th Cir.1987). The District Director's decision may be negated only upon a showing of abuse of discretion. *Ajurulloski v. INS,* 688 F.Supp. 1272, 1276 (N.D.Ill., E.D.1988); *See also Kladis v. INS,* 343 F.2d 513, 515 (7th Cir.1965). "A District Director abuses his discretion if there is no evidence to support his decision or if his decision is based upon an improper understanding of the law." *Ajurulloski,* 688 F.Supp. at 1276 (citing *Bothyo v. Moyer,* 772 F.2d 353, 355 (7th Cir. 1985)).

## IV.  *Merits.*

■ The Sibandas argue, in denying their request, the District Director did not address the statutory, regulatory, and case law factors relating to the granting of voluntary departure. The INA provides that to be eligible for voluntary departure, the "alien shall establish to the satisfaction of the Attorney General that he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure." 8 U.S.C. § 1254(e).

The Sibandas maintain, because the District Director did not address the requirements for eligibility for voluntary departure, he misunderstood the law. I disagree. The District Director was not determining the original eligibility of the Sibandas for voluntary departure; that was not in issue. Rather, his task was to determine whether an extension of voluntary departure was warranted.

In assessing whether the District Director abused his discretion in denying the extension, one must examine the reasons, if any, given for such denial. In the first denial of an extension, the District Director stated he was unable to consider an extension "when case (sic.) remains pending in the Tenth Circuit." A.R. at 53. He nevertheless added that a member of his staff had contacted the Zimbabwe embassy and confirmed that "medical facilities are indeed available for treatment within the country." *Id.* at 54. Thus, although he stated he had no authority

to consider the extension, he impliedly gave, as an added reason for denial, the existence of medical facilities in Zimbabwe, attempting to address the Sibandas' concern for treatment of their children's acute asthma.

In establishing that medical facilities exist in Zimbabwe, however, the District Director did not address the particular concern of the Sibandas that their children could not receive adequate treatment for their acute asthma. In their second request for an extension, the Sibandas submitted copious evidence indicating that their children, Kukhanya and Mthabisi, may not be able to obtain the proper care required for them. A.R. at 21. These included a letter from their treating physician, Joseph Spahn, M.D. at National Jewish Center for Immunology and Respiratory Medicine, *id.* at 21; a letter from Dennis Barlow M.D. who had worked in Zimbabwe at the Mtshabezi Mission Hospital,[4] from 1989 to 1994, stating that "inhalers of all types were sometimes in short supply" and that they might experience difficulty in obtaining certain drugs, *id.* at 22; a letter from the hospital administrator at Mtshabezi Mission Hospital stating the hospital currently has no resident doctor and as a result "some drugs cannot be easily obtained," and that the nearest referral hospital was 115 kilometers away, *id.* at 23; a letter from the coordinator of the Mtshabezi Mission Hospital stating that the drugs prescribed for the children were not available at the hospital nor "even at some of the major hospitals in the country," *id.* a 24; nor was any resident doctor available to "attend to any serious and urgent health cases," *id.*

The District Director's comment in the first denial that a member of the Zimbabwe embassy had stated that "medical facilities are indeed available within the country," *id.* at 53, is not in dispute. The issue is whether the Sibanda children could receive specific drugs and adequate treatment for their asthmatic ailments.

The District Director did not address this issue at all in his second denial, nor indeed did he address any of the concerns raised by

---

4. This is apparently the nearest hospital to the home of the mother of Eliakim Sibanda, where

the Sibandas would stay upon return to Zimbabwe. *See* A.R. at 10.

the Sibandas in their renewed request. These were that the Sibandas feared danger if deported to Zimbabwe; feared their children would not receive adequate medical treatment in Zimbabwe and their education would be severely compromised; and needed time to arrange for planning a new life in Zimbabwe and to transport their goods accumulated in their lengthy stay.

The District Director stated only: "I have reviewed the material you enclosed with your request and the relevant case files. I found your clients have had their cases reviewed and rejected by the IJ, the BIA and the 10th Circuit. I find nothing new in your request to merit an extension of voluntary departure." *Id.* at 1.

The District Director's statement that the Sibandas cases were rejected "by the IJ, the BIA and the 10th Circuit," is simply untrue relating to the issue before him. Both the IJ and the BIA granted the Sibandas voluntary departure. The Tenth Circuit found itself without authority to reinstate or extend the voluntary departure period.[5] Thus, neither the IJ, the BIA, nor the Tenth Circuit addressed the issue of an extension of voluntary departure.

The remaining statement in support of the District Director's second denial is "I find nothing new in your request to merit an extension of voluntary departure." *Id.* at 1. This bald statement, gives no indication that the District Director clearly considered all of the relevant factors in justifying his denial of the extension of voluntary departure. *See Khalaj v. Cole*, 46 F.3d 828 (8th Cir.1995). In particular, one cannot glean from the District Director's denial letter that he took into account any of the significant evidence attached in forty-five pages to the request. I conclude the District Director's denial of the Sibandas' request was unaccompanied by a rational explanation and constituted an abuse of discretion.

In response to the order to show cause, the District Director stated the Sibandas' reasons for their request for voluntary departure indicated they had no intention of departing the United States and intended to use any period of extended voluntary departure to further their cause. In their traverse, the Sibandas maintain they are not seeking an "indefinite" period of voluntary departure but a fixed reasonable time within which to depart the United States if that becomes necessary. They maintain they are willing to leave the United States voluntarily should that become necessary and an important reason for them seeking voluntary departure is to avoid the statutory five-year bar to reentry.

The District Director also states in the response to show cause order that, since the Tenth Circuit has adversely determined the asylum application, the Sibandas cannot, by requesting an extension of voluntary departure, convert that relief to asylum. I agree, and therefore consider an indefinite extension of voluntary departure inappropriate.

The District Director has not shown in the response to the order to show cause why a writ of habeas corpus ordering an extension of voluntary departure for a fixed period should not be granted.

## V. *Order.*

I grant the petition for habeas corpus, reverse the denial of voluntary departure and order the District Director to grant an extension of a twelve month period of voluntary departure from the date of this order. Further, the Sibandas' request for costs and attorney fees under the Equal Access to Justice Act will be considered upon formal application with detailed affidavits if filed within the next twenty days. The Respondent shall have twenty days to file a response with countervailing affidavits, if any.

---

**5.** *See supra* note 1 and accompanying text.